UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, LEGO SYSTEMS, INC., and LEGO JURIS A/S<br><br>Plaintiffs,<br><br>v.<br><br>Laser Pegs Ventures, LLC<br><br>Defendant. | **JURY TRIAL DEMANDED**<br><br>May 22, 2020 |

## COMPLAINT

Plaintiffs LEGO A/S ("LAS"), LEGO Systems, Inc. ("LSI"), and LEGO Juris A/S ("LJAS") (collectively, "the LEGO Group") file this Complaint against Defendant Laser Pegs Ventures, LLC ("Laser Pegs") and allege as follows:

## THE PARTIES

1. Plaintiff LAS is a private company with a place of business located at Aastvej 1, Dk-7190, Billund, Denmark.

2. Plaintiff LSI is a Delaware corporation having its principal place of business at 100 Print Shop Road, Enfield, Connecticut 06082. LSI is responsible for the LEGO Group's U.S. operations, including sales, distribution, marketing, and intellectual property management, and exclusive licensee for intellectual property rights in the U.S.

3. Plaintiff LJAS private company with a place of business located at Koldingvej 2, Dk-7190, Billund, Denmark.

105391169

4. Upon information and belief, Defendant Laser Pegs is a Florida limited liability company with a principal place of business located at 1991 Main Street Suite 227, Sarasota, FL 34236. Upon information and belief, Laser Pegs transacted business in the State of Connecticut.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

6. This Court has personal jurisdiction over Laser Pegs by virtue of its transacting, doing, and soliciting business in this District, and committing acts of copyright and trademark infringement and causing injury in this District.

7. Venue is proper in this District, because the Court has personal jurisdiction over Laser Pegs.

## FACTS

8. The LEGO Group is a well-established industry innovator and leader in designing and manufacturing toys and play materials for children of all ages worldwide. The LEGO Group's toy building elements, figurines and toy sets established the construction toy category, are well-recognized around the world and have enjoyed tremendous commercial success and consistent popular acclaim. Constructive LEGO® play fosters positive, lifelong skills, such as creativity, imagination and creative problem solving, which are valuable to any child.

9. The LEGO Group is known for delivering the very best construction toy products and associated play experiences. In fact, the name "LEGO" is an abbreviation of the Danish words "leg godt" meaning "play well." The LEGO Group was founded in 1932 by Ole Kirk Kristiansen, who started the company making wooden toys and selling them from his workshop in Billund, Denmark. The company has passed from parent to child with Thomas Kirk

Kristiansen, great grandchild of the founder, representing the fourth generation of ownership and currently serving as Deputy Chairman of the Board of Directors. Ole Kristiansen's motto– "det bedste er ikke for godt" meaning "only the best is good enough"– helps explain why, according to a 2020 study by the Reputation Institute, the LEGO Group is the most reputable brand in the world. The phrase also explains why the LEGO Group's products have been named "Toy of the Century" by both *Fortune* magazine and the British Association of Toy Retailers. Over the years, the LEGO Group has amassed significant goodwill and a strong reputation for quality.

10.     The LEGO Group's innovative and commercially successful products are the result of its long-time investment in research and development and commitment to cutting-edge toy designs. The LEGO Group's innovations and products have become so popular and well-recognized that they attract competitors who attempt to capitalize on the LEGO Group's success by copying its innovations and products and preying on the vulnerability of youthful consuming population, instead of developing their own product lines. Over the years, the LEGO Group has made substantial investments in design, research and development, licensing, and manufacturing in a wide variety of product lines, including those containing the Minifigure figurine construction toy products.

  

**Representative LEGO® product lines**

11. As described in further detail below, Laser Pegs has infringed the LEGO Group's intellectual property rights with all products featuring figurines that are confusingly, strikingly and substantially similar to the overall look and feel of the LEGO® Minifigure figurine.

## THE LEGO GROUP'S INTELLECTUAL PROPERTY RIGHTS IN THE MINIFIGURE FIGURINE

12. In 1978, the LEGO® brand introduced its Minifigure figurine. For more than 40 years, the Minifigure figurine has been sold worldwide in numerous varieties of LEGO® brand toy sets, as well as individually, becoming one of the most iconic toys for the LEGO Group. Over 120 million Minifigure figurines have been sold in the U.S. since 1978.

  

**A Representative LEGO® Minifigure figurine**

13. LAS owns numerous copyrights registered with the United States Copyright Office, including Registration Number VA0000655104 and Registration Number VA0000655230 (the "Minifigure Copyrights"), protecting the 3D sculpture and derivative works of the Minifigure figurine.  LSI owns, among other rights, exclusive rights in the U.S. to distribute the copyrighted 3D sculpture and derivative works of the Minifigure figurine.  The registrations and copies of the deposit material are attached as Exhibits A and B.

    

      **Registration Number**                       **Registration Number**
       **VA0000655104**                               **VA0000655230**

      14.    Since 1978, the LEGO Group has continuously displayed the © symbol in connection to the Minifigure figurine on various product packaging.

      15.    Since at least as early as 1993, the LEGO Group has continuously displayed the © symbol in the plastic of the Minifigure figurine in various locations.

      16.    Since at least as early as 1998, the LEGO Group has continuously displayed "© LEGO" in the plastic of the Minifigure figurine in various locations. For example, in the images below, "© LEGO" is in the plastic of each element comprising the Minifigure figurine:



**© LEGO located inside head element of Minifigure figurine**

  

**© LEGO located on the top of leg element of Minifigure figurine**  **© LEGO located on the bottom of leg element of Minifigure figurine**  **© LEGO located on the torso element of Minifigure figurine**

17. LJAS owns numerous trademarks registered with the United States Patent & Trademark Office including Registration Number 4,903,968 for the Minifigure figurine ("the

Registered Minifigure Trademark"). A copy of the Registration Certificate for the Registered Minifigure Trademark is attached as Exhibit C.



**U.S. Trademark Registration Number 4,903,968**

18.     The LEGO Group also has common law trademark rights in the Minifigure figurine set forth in Exhibit C, by virtue of its continuous use of the mark in commerce throughout the U.S. since 1978 (together with the Registered Minifigure Trademark, the "Minifigure Trademarks"). As the U.S. arm of the LEGO Group, LSI is the U.S. licensee with the rights to use and sublicense the Minifigure Trademarks and other trademarks.

19.     The LEGO Group has established valuable (indeed, *invaluable*) trademark rights and goodwill in the Minifigure Trademarks by virtue of its long use and registration of the trademark, the substantial promotional and marketing efforts under the trademark, the expenditure of vast sums in advertising and promotional activities under that trademark, and third-party licensing agreements.

20. The products and services offered, sold, and advertised in connection with the Minifigure Trademarks have generated substantial revenue. Such revenue has exceeded over one billion dollars (USD) internationally.

21. As a result of the long and extensive use of the Minifigure Trademarks, and the significant sales, promotion, advertising, third-party licensing, and commercial success under those marks, the Minifigure figurine has achieved such widespread public exposure and recognition that it is distinctive and is well-known and famous among the general consuming public of the U.S. and abroad.

## LASER PEGS' INFRINGING FIGURINES

22. Laser Pegs has sold figurines (the "Infringing Figurines"), shown below, that are confusingly, strikingly and substantially similar to the overall look and feel of the LEGO® Minifigure figurine.

 

**Representative Infringing Figurines**

23. The Infringing Figurines were advertised and offered for sale on Laser Pegs' website, https://laserpegs.com/. *See* Exhibit D for printout of the website. The website was interactive, as customers, including customers located in Connecticut, can place orders for existing products available at https://laserpegs.com/shop/. Customers could also contact Laser Pegs for support, leave reviews, join a mailing list, and manage their personal accounts via Laser Pegs' website.



**Screenshot of Laser Pegs' website**

24. The Infringing Figurines are also sold at Michaels, Walmart, Barnes & Noble in their retail locations throughout the U.S., including Connecticut locations, and online for local store pickup including at Connecticut locations.

25. The Infringing Figurines are unauthorized reproductions of the LEGO Group's copyrights and trademarks including the Minifigure Copyrights and Minifigure Trademarks.

 

**Comparison of the LEGO® Minifigure figurine (left) and Infringing Figurine (right)**

26. Laser Pegs has had actual notice of the LEGO Group's copyrights and trademarks including the Minifigure Copyrights and Minifigure Trademarks in and to the Minifigure figurine since at least as early as July 29, 2019. Counsel for the LEGO Group sent a letter and e-mails regarding Laser Pegs' infringement.

27. The construction toy market is highly competitive. Selling products that infringe the LEGO Group's copyrights and trademarks will allow Laser Pegs to increase its market share and sales, and enable Laser Pegs to establish relationships with customers, and licensors potentially, for whom the LEGO Group competes. That potential injury to the LEGO Group is unquantifiable.

28. The LEGO Group has no agreement of any kind with Laser Pegs that would authorize the manufacture or sale of the Infringing Figurines. The Infringing Figurines are sold through many of the same trade channels as the LEGO® Minifigure figurine.

## THE LEGO GROUP'S "STUD" TRADEMARKS

29. In 1958, the LEGO® brand of construction toys bearing distinctive cylindrical studs for interconnectivity was launched. The familiar repeating cylindrical stud design has been used by the LEGO Group in connection with a wide assortment of goods and services since that time.

30. LJAS owns numerous trademarks registered with the United States Patent and Trademark Office, including Registration Numbers 2,273,314 and 2,273,321 for cylindrical surface features, covering, "*toy figures and construction toys*," amongst other goods, in Class 28 ("the Registered Cylinder Trademarks"). Copies of the Registration Certificates for the Registered Cylinder Trademarks are attached as Exhibits E and F.



| USPTO Registration No.  2,273,314 | USPTO Registration No. 2,273,321 |

31.     LJAS also owns U.S. Trademark Registration Number 2,922,658 for an eight stud brick in a two-by-four arrangement, covering, "*construction toys*" in Class 28 ("the Registered Brick Trademark") (together with the Registered Cylinder Trademarks, the "Stud Trademarks"). A copy of the Registration Certificate for the Registered Brick Trademark is attached as Exhibit G.  As the U.S. arm of the LEGO Group, LSI is the U.S. licensee with the rights to use and sublicense the Stud Trademarks and other trademarks.



**USPTO Registration No.  2,922,658**

32.     The LEGO Group has common law trademark rights in the Registered Cylinder Trademarks set forth in Exhibits E and F, by virtue of its continuous use of the marks in commerce throughout the U.S. since 1961.

33.     The LEGO Group has common law trademark rights in the Registered Brick Trademark set forth in Exhibit G, by virtue of its continuous use of the marks in commerce throughout the U.S. since 1987.

34.     The LEGO Group has established valuable trademark rights and goodwill in the Stud Trademarks by virtue of its long use and registration of the trademarks, the substantial promotional and marketing efforts under the trademarks, the expenditure of vast sums in advertising and promotional activities under those trademarks, and third-party licensing agreements.

35.     The products and services offered, sold, and advertised in connection with the Stud Trademarks have generated substantial revenue. Such revenue has exceeded over one billion dollars (USD) internationally.

36.     As a result of the long and extensive use of the Stud Trademarks, and the significant sales, promotion, advertising, third-party licensing, and commercial success under those marks, the Stud Trademarks have achieved such widespread public exposure and recognition that it is distinctive and is well-known and famous among the general consuming public of the U.S. and abroad.

**LASER PEGS' INFRINGEMENT OF THE LEGO GROUP'S STUD TRADEMARKS**

37.     Laser Pegs has used construction bricks as source identifiers (the "Infringing Stud Trademarks") that are confusingly similar to the LEGO Group's Stud Trademarks.

38.     Laser Pegs has used four stud construction bricks in its packaging, shown below:



**Four stud bricks shown on Laser Pegs packaging**

39. Laser Pegs has used the four stud bricks in connection with the sale of a line of construction brick toys and figurines.

40. Laser Pegs' use of cylindrical protrusions and four stud bricks as source identifiers for toy figurines and construction toy products is confusingly similar to the Stud Trademarks.

41. The LEGO Group has no agreement of any kind with Laser Pegs that would authorize the use of the Stud Trademarks.

### COUNT I

### (Copyright Infringement of Minifigure Figurine)

42. The LEGO Group hereby repeats and realleges paragraphs 1 through 41 of this Complaint as if fully set forth herein. LAS and LSI, through its agreements, have the authority to bring this claim.

43. The copyrighted Minifigure figurine comprises, in whole or in part, wholly original works of authorship that are copyrightable subject matter under the copyright laws of the U.S., 17 U.S.C. §§ 101, *et seq*. The LEGO Group has complied in all respects with the laws

governing copyright and has secured the rights and privileges in, to, and under the Minifigure Copyrights in the Minifigure figurine.

44. In violation of the LEGO Group's exclusive rights in the Minifigure figurine and the Minifigure Copyrights, Laser Pegs has sold the Infringing Figurines that are strikingly and substantially similar to the overall look and feel of the Minifigure figurine.

45. Laser Pegs' unlawful conduct constitutes direct and indirect infringement of the LEGO Group's exclusive rights in the Minifigure Copyrights, including without limitation the LEGO Group's rights under 17 U.S.C. § 106.

46. Upon information and belief, as a direct and proximate result of Laser Pegs' wrongful conduct, Laser Pegs has realized and continue to realize profits and other benefits rightfully belonging to the LEGO Group.

47. As a result of Laser Pegs' unlawful conduct, the LEGO Group has suffered and will continue to suffer damages.

48. The LEGO Group has suffered and will continue to suffer irreparable harm from Laser Pegs' infringing acts, unless Laser Pegs' infringement is enjoined.

**COUNT II**

**(Trademark Infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a))**

49. The LEGO Group hereby repeats and realleges paragraphs 1 through 48 of this Complaint as if fully set forth herein. LJAS has the authority to bring this claim.

50. Without the LEGO Group's consent, Laser Pegs has used in commerce the Infringing Figurines, and the Infringing Stud Trademarks, as described above, in connection with the offering, sale, and advertising of toy figurines and construction toy products, which are likely

to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51. Upon information and belief, the actions of Laser Pegs described above have at all times relevant to this action been willful.

52. As a direct and proximate result of the actions of Laser Pegs alleged above, the LEGO Group has been damaged and will continue to be damaged.

53. The LEGO Group has suffered and will continue to suffer irreparable harm from Laser Pegs' infringing acts, unless Laser Pegs' infringement is enjoined.

## COUNT III

### (Trademark Infringement, False Designation of Origin, and Unfair Competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))

54. The LEGO Group hereby repeats and realleges paragraphs 1 through 53 of this Complaint as if fully set forth herein. LJAS and LSI, though its agreements, have the authority to bring this claim.

55. The actions of Laser Pegs relating to the Infringing Figurines and Infringing Stud Trademarks are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products and services and commercial activities of Laser Pegs, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the Minifigure Trademarks and Stud Trademarks, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

56. Upon information and belief, the actions of Laser Pegs described above have at all times relevant to this action been willful.

57. As a direct and proximate result of the actions of Laser Pegs alleged above, the LEGO Group has been damaged and will continue to be damaged.

58. The LEGO Group has suffered and will continue to suffer irreparable harm from Laser Pegs' infringing acts, unless Laser Pegs' infringement is enjoined.

## COUNT IV

### (Common Law Trademark Infringement, Unfair Competition, and Misappropriation)

59. The LEGO Group hereby repeats and realleges paragraphs 1 through 58 of this Complaint as if fully set forth herein. LJAS and LSI, through its agreements, have the authority to bring this claim.

60. Laser Pegs' actions described above, including its manufacture, sale, offer for sale, display and distribution of the Infringing Figurines constitute common law trademark infringement, unfair competition, and misappropriation of the LEGO Group's goodwill under the common law of Connecticut and other states.

61. Upon information and belief, the actions of Laser Pegs described above have at all times relevant to this action been willful.

62. As a direct and proximate result of the actions of Laser Pegs alleged above, the LEGO Group has been damaged and will continue to be damaged.

63. The LEGO Group has suffered and will continue to suffer irreparable harm from Laser Pegs' infringing acts, unless Laser Pegs' infringement is enjoined.

## COUNT V

### (Violation of the Connecticut Unfair Trade Practices Act)

64. The LEGO Group hereby repeats and realleges paragraphs 1 through 63 of this Complaint as if fully set forth herein.  LJAS and LSI, through its agreements, have the authority to bring this claim.

65. By engaging in the acts alleged above, Laser Pegs has willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

66. Laser Pegs' willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

67. Laser Pegs' conduct has caused and will continue to cause substantial injury to the LEGO Group and to the public interest.

68. Laser Pegs committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

69. The LEGO Group has suffered, and if Laser Pegs is not enjoined will continue to suffer, an ascertainable loss of money or property as a result of Laser Pegs' actions.

70. By virtue of the conduct above, Laser Pegs has engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, the LEGO Group requests judgment in its favor and against Laser Pegs as follows:

1. A judgment that Laser Pegs has infringed the Minifigure Copyrights;
2. A judgment that Laser Pegs has infringed the Minifigure Trademarks;
3. A judgment that Laser Pegs has infringed the Stud Trademarks;
4. For a temporary restraining order, preliminary and permanent injunction restraining Laser Pegs, their employees, and all persons in active concert or participation with Laser Pegs or with any of the foregoing from:
   a. manufacturing, selling, offering for sale, displaying or authorizing the sale of products, including the Infringing Figurines, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks;
   b. manufacturing, selling, offering for sale, displaying or authorizing the sale of products that make use of the Infringing Stud Trademarks including use of any trademarks that are confusingly similar to the Stud Trademarks;
5. An order that Laser Pegs be directed to file with this Court and serve on the LEGO Group within thirty days after the service of an injunction, a report, in writing and under oath, confirming all copies of the Infringing Figurines, and products and product packaging using the Infringing Stud Trademarks and means for copying the same, have been destroyed;
6. Awarding the LEGO Group its actual damages and Laser Pegs' profits in an amount to be determined at trial or statutory damages pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117 and other applicable laws;
7. Awarding the LEGO Group its reasonable attorney's fees and costs; and
8. Such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the LEGO Group demands trial by jury in this action of all issues triable by jury in this matter.

Dated: May 22, 2020

                                                    Respectfully submitted,

                                                    /s/ Elizabeth A. Alquist
                                                    Elizabeth A. Alquist (ct15643)
                                                    Woo Sin Sean Park (ct30074)
                                                    Day Pitney LLP
                                                    242 Trumbull Street
                                                    Hartford, CT 06103-1212
                                                    Phone (860) 275-0100
                                                    Fax (860) 275-0343
                                                    eaalquist@daypitney.com
                                                    wpark@daypitney.com

                                                    *Attorneys for Plaintiffs*

                                                    LEGO A/S, LEGO SYSTEMS, INC., and
                                                    LEGO JURIS A/S